# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 9:26-cr-80003-DMM

**UNITED STATES OF AMERICA**

**v.**

**RONALD ALAN FRANKEL,**

    **Defendant.**

_____/

## GOVERNMENT'S MOTION IN LIMINE

In advance of the February 23, 2026 trial in this case, the government files this motion *in limine* seeking the following pretrial rulings from the Court:

1)     Preclude any reference to any potential sentence the Defendant faces if convicted;

2)     Preclude defense counsel from raising the sexual history of the victim, as such evidence is irrelevant, unfairly prejudicial, and inadmissible under Federal Rule of Evidence 412;

3)     Preclude defense counsel from mentioning or eliciting self-serving statements made by the Defendant in his post-arrest statement, as such statements are inadmissible hearsay;

4)     Preclude defense counsel from arguing for a mistake of age defense, including a particular conversation between the defendant and an undercover law enforcement officer; and

5)     Preclude defense counsel from using a psychologist to testify, among other things, to statements made by the defendant out of court and to testify that the defendant is not a pedophile.

A summary of the facts expected to be introduced at trial can be found in the criminal complaint and the government's pleading in docket entry 37. Those facts are not intended to detail all the facts or evidence to be used at trial by the government, but are rather intended to sufficiently inform the Court in order to rule on this motion. In addition to those facts, relevant to this motion is the alleged fact that after the offense conduct in this case, the defendant engaged in a text

conversation with an undercover law enforcement officer, during which conversation the defendant rejected a sexual relationship with an undercover officer posing as a 17 year-old (this is relevant to requested pretrial ruling #4 above).

<u>**Argument and authority**</u>

1)      Preclude reference to any potential sentence the Defendant faces if convicted

The Defendant should be precluded from attempting to evoke sympathy from the jury by discussing any possible penalties if he is convicted. Such evidence is irrelevant to this case and amounts to nothing more than impermissible jury nullification. The sole purpose of these anticipated arguments and evidence would be to mislead the jury, confuse the issues, and suggest the jury improperly decide this case on an emotional basis. Fed. R. Evid. 403.  The Court should preclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. The Eleventh Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced in any way by either sympathy for or prejudice against the Defendant or the Government." See Eleventh Circuit Pattern Jury Instructions (Criminal Cases) Basic Instruction No. 2.1; and also provides that the jury: "must never consider punishment in any way to decide whether the Defendant is guilty or not guilty. If you find the Defendant guilty, the punishment is for the Judge alone to decide later."  Pattern Jury Instruction B10.1.  The Supreme Court has also recognized that "providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Shannon v. United States*, 512 U.S. 573, 579 (1994). Any references to potential sentencing in this case are not only irrelevant and unfairly prejudicial but are also a blatant ploy for sympathy and jury nullification as well. Thus, any reference to the potential sentence of imprisonment if convicted should be prohibited at trial.

2

2)     Preclude defense counsel from raising the sexual history of the victim, as such evidence is irrelevant, unfairly prejudicial, and inadmissible under Federal Rule of Evidence 412;

This Court should prohibit the Defendant from discussing the sexual history of the victim in this case, including any evidence of online sexual activity with people other than the defendant. Fed. R. Evid. 412 is a rule of exclusion that imposes significant limitations on the admissibility of "evidence relating to [a] victim's other sexual behavior or alleged sexual predisposition, whether offered as substantive evidence or for impeachment." Fed. R. Evid. 412, Advisory Committee Note (1994 Amendment).  Rule 412(a) provides that:

The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):

(1) Evidence offered to prove that any alleged victim engaged in other sexual behavior;
(2) Evidence offered to prove any alleged victim's sexual predisposition.

Rule 412 bars the admission of "evidence relating to [a] victim's other sexual behavior or alleged sexual predisposition, whether offered as substantive evidence or for impeachment." Fed. R. Evid. 412, Advisory Committee Note (1994 Amendment). The Rule's purpose is to "safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details." *Id.*

The protections afforded to victims by Rule 412 are especially important in the context of minor victims who are beneath the age of consent. *See United States v. Ruggiero*, 791 F.3d 1281, 1288 (11th Cir. 2015); *see also United States v. Ogden*, 685 F.3d at 606 ("The rape-shield rule encourages victims of sexual abuse to report their abusers by protecting the victims' privacy. *See* Fed. R. Evid. 412 advisory comt. notes. The rule's protections were especially important in this case, because the victim was underage." (citing *Clardy v. McKune*, 89 Fed.App'x. 665, 673–74 (10th Cir. 2004)).

3

Rule 412(b)(1) allows such evidence to be admitted when its "exclusion ... would violate the constitutional rights of the defendant."  In determining the admissibility of a victim's other sexual behavior under Rule 412(b)(1)(C), defendants have a constitutional right under the Fifth and Sixth Amendments to introduce evidence in their defense.  *United States v. Pumpkin Seed*, 572 F.3d 552, 559 (8th Cir. 2009).  However, "the right to present relevant testimony is not without limitation." *Rock v. Arkansas*, 483 U.S. 44, 55 (1987). For instance, "trial judges retain wide latitude . . . to impose reasonable limits on [testimony] based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Limitations on a defendant's constitutional right to present evidence are permissible unless they are "arbitrary or disproportionate to the purposes they are designed to serve." *Michigan v. Lucas*, 500 U.S. 145, 151 (1991).

The government's position is that defense inquiry into any other sexual activity by the victim would be merely a fishing expedition and an attempt to unfairly prejudice the jury.  This is, in part, why courts have repeatedly found that a victim's sexual history is inadmissible in sex trafficking trials for instance. *See, e.g.*, *United States v. Gemma*, 818 F.3d 23, 34 (1st Cir. 2016) (noting that evidence of a victim's prior prostitution in a § 1591(a) case is "either entirely irrelevant or of slight probative value in comparison to its prejudicial effect"); *United States v. Rivera*, 799 F.3d 180, 185 (2d Cir. 2015) (rejecting the argument that "a victim's experience in the sex industry, and knowledge of its practices, is . . . relevant to whether she was coerced or whether, on the other hand, she knew precisely what she was getting into and accepted it") (quotation marks and emphasis omitted); *United States v. Roy*, 781 F.3d 416, 420–21 (8th Cir. 2015) ("The victim's participation in prostitution either before or after the time period in the indictment has no relevance

to whether [the defendant] beat her, threatened her, and took the money she made from prostitution in order to cause her to engage in commercial sex.").    As such, the Court should not permit this type of inquiry in this case. Exclusion of such evidence does not violate the Defendant's rights under the Confrontation Clause and is squarely in line with established Eleventh Circuit precedent. *See United States v. Sarras,* 575 F.3d 1191, 1213 (11th Cir. 2009); *United States v. Ruggiero,* 791 F.3d 1281, 1288 (11th Cir. 2015).

     3)     Preclude defense counsel from mentioning or eliciting self-serving statements made by the Defendant in his post-arrest statement, as such statements are inadmissible hearsay;

The defendant made a post-arrest statement in this case.  The government has already represented to defense that the government will not be using the defendant's post-arrest statement in its case in chief.  As such, the defendant is not allowed to reference the defendant's statements during trial on cross examination of the government's witnesses or in the defendant's case in chief. A defendant "cannot attempt to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." *United States v. Cunningham*, 194 F.3d 1186, 1999 (11th Cir. 1999) ( citing *United States v. Willis*, 759 F.2d 1486 (11th Cir. 1985)). A defendant also may not seek to introduce his own exculpatory statements through another witness. *United States v. Vernon*, 593 F. App'x. 883, 890 (11th Cir. 2014) ("A defendant may not introduce his own exculpatory statement through another witness without subjecting himself to cross-examination") (citations omitted).

Accordingly, Defendant should be precluded from attempting to introduce or reference post-arrest statements at any point during trial.

4)      Preclude defense counsel from arguing for a mistake of age defense, including a conversation between the defendant and an undercover law enforcement officer;

The government's position on a mistake of age defense is fully briefed in docket entries 31 and 33, which the government incorporates into this pleading.   As a matter of law: actual knowledge of the victim's age is not an element of the offense; a mistake of age defense is not permitted under Eleventh Circuit precedent; and doing so is not unconstitutional.   As such, the government seeks to preclude the defense from arguing a mistake of age defense.   Moreover, the government seeks to preclude the introduction of evidence that the defendant engaged in a text conversation with  an undercover law enforcement officer, during which conversation the defendant rejected a sexual relationship with an undercover officer posing as a 17 year-old.   This evidence would be offered merely for the purpose of arguing a mistake of age defense.   Such evidence is irrelevant because knowledge by the defendant of the victim's age is not an element of the offense under the statute charged in this case.   *See* Government's brief in DE 31.

In docket entry 37, the government filed a notice of intent to introduce relevant, inextricably intertwined and alternatively, 404(b) evidence, as to three categories of evidence:

i)      search terms found on the defendant's phone before and after the charged crime;

ii)     a text conversation before the charged crime between the defendant and an unknown person regarding an unknown 17-year-old girl; and

iii)     after the defendant was arrested, numerous videos and photographs were found on the defendant's phone of unidentified females performing sex acts or posing nude, many of which involve females whose age is difficult to ascertain—it is hard to tell whether they are minors or young adults based merely on the physical features shown in the photos and videos.

The Court's pretrial rulings may alter what evidence the government will seek to introduce at trial.   For example, if the Court were to find that the conversation between the UC and the defendant is only admissible if the government introduces the conversation regarding an unknown

17 year-old-girl, then the government might withdraw its intent to use the conversation about the

17-year-old.

5)      Preclude defense counsel from using a psychologist to testify, among other things, to statements made by the defendant out of court and to testify that the defendant is not a pedophile

Counsel for defendant has notified the government that they intend to use a psychologist

at trial who will say in essence that the defendant is not a pedophile and therefore did not have the

requisite intent to commit this crime.  The witness's report and letter sent to the government state,

among other things, the following:

- the defendant believed the victim was 18 years old;
- the defendant's father was frequently absent during his childhood due to travel;
- the defendant seeks companionship with women 18-23 years old;
- the defendant pays females for sex out of "generosity, nurturance, and seeking connection through giving";
- the passing of the defendant's son led to strained relationships in his life and contributed to his first divorce;
- the defendant's fantasies involve only adult women;
- the defendant experiences significant emotional distress;
- there are no signs of the defendant "victim blaming";
- the defendant is not a pedophile or child molester;
- the defendant is nonviolent; that he suffers from "Depressive Disorder Due to Another Medical Condition With depressive features";
- the defendant is low risk and low probability for deviant sexual behavior; and
- numerous statements made by the defendant to the psychologist about the alleged crime in this case.

This witness should be excluded under the framework for expert witnesses.  That

framework is explained in *United States v. Frazier*, 387 F.3d 1244, 1261–63 (11th Cir. 2004):

> Thus, it remains a basic foundation for admissibility that "[p]roposed [expert] testimony must be supported by appropriate validation—*i.e.,* 'good grounds,' based on what is known." *Daubert,* 509 U.S. at 590, 113 S.Ct. at 2795. As the Supreme Court put it, "the Rules of Evidence—especially Rule 702—... assign to the trial judge the task of ensuring that an expert's testimony ... rests on a reliable foundation." *Id.* at 597, 113 S.Ct. at 2799.
>
> When evaluating the reliability of scientific expert opinion, the trial  judge must assess "whether the reasoning or methodology underlying the testimony is

scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93, 113 S.Ct. at 2796. To evaluate the reliability of scientific expert opinion, we consider, to the extent practicable:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Quiet Tech.,* 326 F.3d at 1341 (citing *McCorvey,* 298 F.3d at 1256 (citing *Daubert,* 509 U.S. at 593–94, 113 S.Ct. at 2796–97)). These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion. *See Kumho Tire,* 526 U.S. at 150–152, 119 S.Ct. at 1175–76; Fed.R.Evid. 702 advisory committee's note (2000 amends.); *see also Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 155 (3d Cir.1999) ("[N]ot only must each stage of the expert's testimony be reliable, but each stage must be evaluated practically and flexibly without bright-line exclusionary (or inclusionary) rules.").

The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony. *Kumho Tire,* 526 U.S. at 152, 119 S.Ct. at 1176; *see also Clark v. Takata Corp.,* 192 F.3d 750, 758 (7th Cir.1999) ("In determining whether an expert's testimony is reliable, the *Daubert* factors are applicable in cases where an expert eschews reliance on any rigorous methodology and instead purports to base his opinion merely on 'experience' or 'training.' "). As the Supreme Court explained in *Kumho Tire:*

> "In certain cases, it will be appropriate for the trial judge to ask, for example, how often an engineering expert's experience-based methodology has produced erroneous results, or whether such a method is generally accepted in the relevant engineering community. Likewise, it will at times be useful to ask even of a witness whose expertise is based purely on experience, say, a perfume tester able to distinguish among 140 odors at a sniff, whether his preparation is of a kind that others in the field would recognize as acceptable."

526 U.S. at 151, 119 S.Ct. at 1176. Sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful. As a result, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152, 119 S.Ct. at 1176. Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial. *See* Fed.R.Evid. 702 advisory committee's note (2000 amends.) ("The trial judge in

*all* cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." (emphasis added)).

The final requirement for admissibility of expert testimony under Rule 702 is that it assist the trier of fact. By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. *See United States v. Rouco,* 765 F.2d 983, 995 (11th Cir.1985) (expert testimony admissible if it offers something "beyond the understanding and experience of the average citizen"). Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments. *See* 4 *Weinstein's Federal Evidence* § 702.03[2] [a].

Because of the powerful and potentially misleading effect of expert evidence, *see Daubert,* 509 U.S. at 595, 113 S.Ct. at 2798, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403.[15] Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, *see Rouco,* 765 F.2d at 995, or if the expert testimony is cumulative or needlessly time consuming. *See, e.g., Hull v. Merck & Co., Inc.,* 758 F.2d 1474, 1477 (11th Cir.1985) (per curiam) (finding that admission of speculative and "potentially confusing testimony is at odds with the purposes of expert testimony as envisioned in Fed.R.Evid. 702"); *see also United States v. Stevens,* 935 F.2d 1380, 1399 (3d Cir.1991) (finding expert testimony properly excluded because its probative value was outweighed by concerns of "undue delay, waste of time, or needless presentation of cumulative evidence"). Indeed, "the judge in weighing possible prejudice against probative force under Rule 403 ... exercises more control over experts than over lay witnesses." Weinstein, 138 F.R.D. at 632; *see also Salem v. U.S. Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962). Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse.

*United States v. Frazier*, 387 F.3d 1244, 1261–63 (11th Cir. 2004).

The government's position is that all of the psychologist's statements in her report and letter are inadmissible. This witness is first and foremost a Trojan Horse to bring in the defendant's own statements to make the jury feel bad for him without him being subject to cross-examination. That is why these statements are inadmissible hearsay under the law stated above. Second, the psychologist's overarching opinion—that the defendant is not a pedophile and that he thought that

the victim was not a minor—is not relevant to any of the elements the government must prove, because mistake of age is not a defense.   Moreover, the government is not even fully convinced that expert's statements are "properly grounded, well-reasoned, and not speculative."  Regardless, the proffered expert testimony in this case does not concern "matters that are beyond the understanding of the average lay person," and does not have any tendency to make any of the elements of the crime more or less probable (Fed. R. Evid. 401) because, again, knowledge of the victim's age is not an element of the crime in statutory rape cases.   For these reasons, the psychologist's testimony should not be permitted.

Respectfully submitted,

JASON A. REDING QUINONES
UNITED STATES ATTORNEY

By:   /s/ *Marton Gyires*
Marton Gyires
Assistant United States Attorney
Court ID No.: A5501696
U.S. Attorney's Office - SDFL
Marton.Gyires@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I filed the foregoing document with the Clerk of the Court

through CM/ECF, which will transmit notification to all parties of record.

/s/ *Marton Gyires*
Marton Gyires
Assistant United States Attorney